UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHIRLEY LEONARDSON, as Personal
Representative of the Estate of Douglas
Leonardson, Jr., Deceased,

      Plaintiff,

    v.

SGT. ERIC PEEK, DEPUTY DEBRA
RICE, DEPUTY BRETT HALSEY,
DEPUTY CHRIS KUHL, DEPUTY
MELVIN HARTMAN, SHERIFF DAN
HEYNS, N. RELIFORD, CMA and DR.
WILLIAM DOBBINS,

      Defendants.

_____/

CASE NO. 05-CV-40046-DT
JUDGE PAUL V. GADOLA
MAGISTRATE JUDGE PAUL KOMIVES

## <u>REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (docket #108 and #109)</u>

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.    *Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.    *Summary Judgment Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.    *Section 1983 and Eighth Amendment Medical Claims* . . . . . . . . . . . . . . . . . . . . . . 10
    D.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        1.    *Defendant Heyns* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        2.    *Defendants Kuhl, Halsey, and Hartman* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        3.    *Defendants Rice and Peek* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        4.    *The Medical Defendants* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        5.    *Qualified Immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

I.    RECOMMENDATION: The Court should deny the motion for summary judgment by defendants Dobbins and Reliford (docket #109).  The Court should grant in part and deny in part the motion for summary judgment by defendants Peek, Rice, Halsey, Kuhl, Hartman, and Heyns (docket #108).  Specifically, the Court should grant this motion with respect to plaintiff's claims against defendants Heyns, Kuhl, Hartman, Halsey, and deny the motion with respect to plaintiff's claims against defendants Rice and Peek.

II.   REPORT:

A.    *Procedural Background*

Plaintiff Shirley Leonardson ("plaintiff"), as personal representative of the estate of her son, Douglas Leonardson ("Leonardson"), commenced this action pursuant to 42 U.S.C. § 1983 on February 10, 2005, alleging that defendants were deliberately indifferent to Leonardson's medical needs in violation of the Fourth, Eighth, and Fourteenth Amendments.  Plaintiff also asserted state law claims of gross negligence and intentional infliction of emotional distress, however the Court declined to exercise supplemental jurisdiction over those claims and dismissed them from the case. *See* Order of Partial Dismissal, dated 3/3/05.  Plaintiff's claims arise from the death of Leonardson while incarcerated at the Jackson County Jail.  Defendants are Jackson County Sheriff Dan Heyns; Sgt. Eric Peek and Deputies Debra Rice, Brett Halsey, Chris Kuhl, and Melvin Hartman, Sheriff's Department employees at that jail at the time relevant to plaintiff's claims; Dr. Williams Dobbins, the jail physician; and Neely Reliford, a nurse at the jail.

The matter is currently before the Court on two motions for summary judgment filed by defendants.  On February 26, 2007, defendants Peek, Rice, Halsey, Kuhl, Hartman, and Heyns (collectively "the Jail defendants") filed a motion for summary judgment (docket #108).  The Jail

2

defendants argue that they are entitled to summary judgment because: (1) defendants Kuhl, Halsey, and Hartman were not personally involved in the alleged constitutional violation; (2) defendants Rice and Peek did not exhibit deliberate indifference to Leonardson's medical needs; (3) with respect to the claims against defendant Heyns in his official capacity, plaintiff has failed to show that a custom or policy of the County caused the alleged constitutional deprivation; and (4) the right on which plaintiff relies was not clearly established, and thus defendants are entitled to qualified immunity. On February 27, 2007, defendants Dobbins and Reliford (collectively "the medical defendants") filed a separate motion for summary judgment (docket #109). The medical defendants argue that they are entitled to summary judgment because there is no evidence that they were deliberately indifferent to Leonardson's medical needs. Plaintiff filed separate responses to the motions as well as a combined brief in support of the responses on March 22, 2007. Plaintiff also filed a supplemental brief in response on March 23, 2007. The Jail defendants filed a reply to plaintiff's response on March 29, 2007.[1]

B.    *Factual Background*

Although the parties dispute the legal significance of the facts, for the most part the facts themselves are undisputed. In late November 2002, Leonardson was sentenced to a term of 93 days' imprisonment in the Jackson County Jail. On November 26, 2002, a medical intake form was completed by defendant Reliford. Leonardson reported that he suffered from asthma, but reported

---

[1]Plaintiff and the medical defendants also argue with respect to plaintiff's claims for intentional infliction of emotional distress. As noted above, the Court has already declined to exercise supplemental jurisdiction over this claim and has dismissed it from the case. Accordingly, I do not consider the claim here. Further, on March 27, 2007, I entered an Order granting plaintiff's motion for leave to amend to assert a state law claim of medical malpractice. That Order is currently on appeal to the Court, and is not the subject of either of defendants' motions.

no other medical conditions. *See* Medical Def.s' Br., Ex. P, Aff. of Neely Reliford, ¶ 4. On December 10, Leonardson was seen by Sheila Worden to prepare him for his routine medical examination. At that time, plaintiff complained of dizziness and vomiting. *See id.*, ¶ 5. On the following day, Leonardson was given his routine medical examination by Defendant Dobbins. Dr. Dobbins observed an enlarged thyroid and questionable weight loss, and ordered a comprehensive blood work-up. *See id.*, Ex. C, Aff. of William H. Dobbins, ¶ 5. Defendant Reliford was informed by another inmate that Leonardson was on a hunger strike and was not eating or drinking because he was afraid of going to prison. When she examined Leonardson to draw his blood, plaintiff confirmed this fact to her. *See id.*, Ex. B., Reliford Aff., ¶ 6.[2] The lab work revealed elevated BUN, creatine, potassium, and TSH levels, and a low level of sodium.[3] Dr. Dobbins diagnosed dehydration, hyponatremia (low sodium), and hyperkalemia (high potassium). He ordered Leonardson placed under close supervision, hydration with Gatorade, and daily lab work to monitor Leonardson's potassium and sodium levels. *See* Pl.'s Br., Ex. A, at 225, 227; Ex. B, Dobbins Dep. Tr., at 47-49, 57-58, 62-64; Medical Def.'s Br., Ex. B, Reliford Aff., ¶ 7; Ex. C, Dobbins Aff., ¶¶ 5-6. Leonardson was transferred to an observation cell and defendant Reliford posted a note to the

---

[2]Defendant Dobbins also avers that he was notified that Leonardson was on a hunger strike, *see* Medical Def.'s Br., Ex. C, Dobbins Aff., ¶ 6, and Deputy Benson documented a report from Leonardson's cell mate about the hunger strike, *see* Jail Def.'s Br., Ex. 10, at 1. Defendants Peek and Hartman also testified that they were told Leonardson was on a hunger strike, *see id.*, Ex. 7, Peek Dep. Tr., at 35-36; Ex. 12, Hartman Dep. Tr., at 39-40, while defendants Rice and Halsey testified that they did not know about any hunger strike, *see id.*, Ex. 13, Rice Dep. Tr., at 13; Ex. 14, Halsey Dep. Tr., at 14, 28-29.

[3]BUN levels measure the urea concentration of the blood in terms of nitrogen content. *See* MEDICAL DICTIONARY ONLINE, at www.online-medical-dictionary.org/omd.asp?q=bun. TSH refers to thyroid stimulating hormone, a hormone secreted by the pituitary gland that promotes the growth of the thyroid gland and stimulates the production of thyroid hormones. *See id.*, at www.online-medical-dictionary.org/omd.asp?q-tsh.

jail staff that Leonardson was to be given 8 ounces of Gatorade every three hours. These instructions were carried out by the jail staff. *See* Jail Def.'s Br., Ex. 8, Reliford Dep. Tr., at 89-91; Ex. 9. Defendant Reliford drew Leonardson's blood again on December 12. The lab work revealed that Leonardson's BUN and potassium levels were still elevated, and that his sodium level had decreased more. Defendant Dobbins ordered that Leonardson's food and fluid intake continue to be monitored. *See* Pl.'s Br., Ex. A, at 226, 234; Ex. B., Dobbins Dep. Tr., at 65.

On the following day, December 13, defendant Reliford attempted to draw Leonardson's blood, but was unable to locate a vein. She contacted Dr. Dobbins, who instructed that Leonardson be taken to the hospital. According to Reliford, Leonardson appeared to be nearly dead at this time. *See* Pl.'s Br., Ex. D, Reliford Dep. Tr., at 114-19; Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 8; Ex. C, Dobbins Aff., ¶ 8; Jail Def.s' Br., Ex. 3, Dobbins Dep., at 68-69. Reliford arranged for Leonardson to be taken to the hospital in a patrol car. *See* Pl.'s Br., Ex. D, Reliford Dep. Tr., at 121-22. Leonardson collapsed as he was being put into the patrol car, and there was no sign of a pulse. Deputy Benson and Reliford began CPR, and an ambulance was called. Plaintiff was revived, and taken by ambulance to the hospital. *See* Pl.'s Br., Ex. A, at 234-35; Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 8; Ex. C, Dobbins Aff., ¶ 9; Jail Def.s' Br., Ex. 10.

Leonardson was treated at Foote Hospital from December 13 through December 17, by Dr. Gregg Patten and by Dr. David Halsey, an endocrinologist. By December 15, Leonardson had improved to the point that he could tolerate a regular diet. *See* Jail Def.s' Br., Ex. 15, at 836-39, 849, 859. Leonardson was discharged on December 17. At that time, he reported that he was feeling well, and a physical examination was normal with the exception of atrophic testicles. *See* Pl.'s Br., Ex. C, Dr. David Halsey Dep. Tr., at 9; Ex. E, at 123-26. Leonardson was diagnosed with

Addison's Disease and polyglandular autoimmune disorder. *See* Pl.'s Br., Ex. C, Dr. David Halsey Dep. Tr., at 26. Dr. Halsey also opined that Leonardson's prior symptoms were indicative of adrenal insufficiency. *See id.* at 20. Leonardson was discharged in good condition, with instructions that he have close follow-up by Dr. Dobbins for polyglandular failure and close monitoring. He was prescribed potassium, Cortisol Acetate, and Synthroid. Dr. Patten emphasized to Leonardson the importance of taking his medications, and provided him with a reduced copy of the consultation and Dr. Halsey's recommendations to keep with him at all times. *See* Pl.'s Br., Ex. E, at 127-28; Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 9.

Upon his return to the Jail, Leonardson appeared alert and responsive. *See* Jail Def.s' Br., Ex. 8, Reliford Dep. Tr., at 126-29. Dr. Dobbins ordered that Leonardson be placed in a close observation cell. *See* Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 10. At some point thereafter Leonardson was removed from the close observation cell. On December 18, Leonardson was examined by Dr. Dobbins, who noted Leonardson's diagnosis and reported that he would follow Dr. Halsey's instructions. *See* Pl.'s Br., Ex. A, at 213; Ex. B, Dobbins Dep. Tr., at 97-99. On December 23, Reliford drew blood from Leonardson. *See* Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 12. Leonardson's BUN and potassium levels were still elevated and his sodium was still low, although the levels were better than they had been prior to his hospitalization. *See* Pl.'s Br., Ex. A, at 214, 228. Between December 17 and December 29, Leonardson did not request any medical care. *See* Medical Def.s' Br., Ex. B, Reliford Aff., ¶¶ 12-13.

On December 29, Leonardson gave to the guards an Inmate Request for Medical Care. His request indicated that he was dizzy, vomiting, and having chest pains, and that the symptoms had been present for three days. The request was forwarded to the medical staff. *See* Pl.'s Br., Ex. G;

Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 13. On the morning of December 30, Sgt. Brett Halsey noticed that Leonardson had not eaten, and the inmate in the adjacent cell indicated that Leonardson had not eaten in a couple of days. Leonardson appeared dazed and lethargic. Sgt. Halsey contacted the nurse on duty, who had plaintiff transferred back into a close observation cell. *See* Pl.'s Br., Ex. H, Sgt. Brett Halsey Dep. Tr., at 13-19. Leonardson was then examined by defendant Reliford, who noted that he had dry lips but appeared alert and oriented. *See* Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 14; Jail Def.s' Br., Ex. 18, at 10. Reliford suspected a viral illness because the flu had been going around the Jail, but notified Dr. Dobbins. *See* Pl.'s Br., Ex. A, at 214; Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 14; Jail Def.s' Br., Ex. 8, Reliford Dep. Tr., at 146-49. Dobbins instructed Reliford to call Dr. Halsey's office. *See* Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 14.

Defendant Reliford contacted Dr. Halsey's office. Dr. Halsey was not in, but she spoke with Dr. Lynn VanWagnen, who was covering for Dr. Halsey. Reliford explained that Leonardson was dehydrated and had been vomiting, and reported Leonardson's lab results, vital signs, and prior diagnoses. Dr. VanWagnen ordered that Leonardson be given 50mg of Cortisol Acetate orally, and that if he could not keep it down that he be given hydrocortisone by intramuscular injection. *See* Pl.'s Br., Ex. I, VanWagnen Dep. Tr., at 13-15, 17-19, 22-23; Medical Def.s' Br., Ex. B, Reliford Aff., ¶¶ 15-18. Reliford reported the conversation to Dr. Dobbins, who ordered the Cortisol Acetate be given. Reliford administered the medication, but Leonardson was unable to keep it down. Dr. Dobbins ordered a Tigan suppository and a repeat of the Cortisol Acetate. Leonardson kept the second dose down without vomiting. Dobbins ordered that Leonardson remain in a close observation cell. *See* Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 20; Jail Def.s' Br., Ex. 8, Reliford Dep. Tr., at 158.

On the morning of December 31, Leonardson was examined by Dr. Dobbins. He noted that Leonardson had lost nine pounds since December 11, and that Leonardson's sodium level remained low. *See* Pl.'s Br., Ex. A, at 215; Ex. B, Dobbins Dep. Tr., at 99-100; Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 21. Leonardson walked unassisted and looked better than he had on the previous day. *See* Pl.'s Br., Ex. B, Dobbins Dep. Tr., at 99; Jail Def.s' Br., Ex. 8, Reliford Dep. Tr., at 158-59, 172-73. Leonardson reported that he felt better. *See* Jail Def.s' Br., Ex. 18, at 11. Dr. Dobbins ordered that Leonardson be administered 50 mg of Cortisol Acetate in the morning and an additional 25 mg in the afternoon, that the lab work be repeated that day, and that Leonardson be hospitalized if he did not progress. *See* Pl.'s Br., Ex. A, at 215; Ex. B, Dobbins Dep. Tr., at 101-02; Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 21. At 1:00 p.m., Reliford went to Leonardson's cell to draw blood for the lab work. Leonardson was sleeping and indicated that he did not want to be disturbed to do the blood work. Reliford noted that she would attempt to draw blood the following morning. She left when her shift ended at 3:00 p.m. *See* Medical Def.s' Br., Ex. B, Reliford Aff., ¶ 22; Jail Def.s' Br., Ex. 18, at 11.

Defendants Rice and Peek began their shift at 11:00 p.m. on the evening of December 31. Sometime between 4 a.m. and 5 a.m. on January 1, Leonardson requested assistance using the bathroom. Rice went to the cell and requested Peek's assistance. When they tried to lift Leonardson, he said he could not put his feet down. They replaced him on the bed and left the cell. *See* Jail Def.s' Br., Ex. 13, Rice Dep. Tr., at 24-31. Around 5:00 a.m., Rice went to Leonardson's cell to check on him. He was lying still with his mouth open. Rice called in Peek, and the two placed Leonardson on the floor and began CPR. While they continued CPR , Deputy Hartman called 911. Paramedics from the Jackson Fire Department arrived and continued CPR for 15-20

minutes.  Leonardson was pronounced dead at 5:30 a.m.  *See* Jail Def.s' Br., Ex. 10, at 7; Ex. 13,

Rice Dep. Tr., at 58-60.  Following an autopsy, Dr. Valery Alexandrov concluded that Leonardson

died of Type II polyglandular autoimmune syndrome with Addison's Disease and hypothyroidism,

aggravated by self-inflicted food deprivation.  Based on the food deprivation, Dr. Alexandrov

concluded that the manner of death was suicide.  *See* Medical Def.s' Br., Ex. H.

C.     *Legal Standards*

     1.     *Summary Judgment Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury

could return a verdict for the non-moving party."  *Hedrick v. Western Reserve Care Sys.*, 355 F.3d

444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact

is material only if its resolution will affect the outcome of the lawsuit."  *Hedrick*, 355 F.3d at 451-52

(citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must

view the evidence in a light most favorable to the non-movant as well as draw all reasonable

inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d

603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of

material fact as to an essential element of the non-moving party's case."  *Hedrick*, 355 F.3d at 451

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party

need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the

burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

2.    *Section 1983 and Eighth Amendment Medical Claims*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). Further, the Supreme Court has made clear that liability in a § 1983 action cannot be based on a theory of *respondeat superior. See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "[t]o recover damages under 42 U.S.C. § 1983,

10

a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.*"

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also*, *Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

The Eight Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511

U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard,

> a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id.* at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably

under the circumstances. *See id*. at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's claims that defendants denied Leonardson medical care are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims have a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

D.    *Analysis*

As noted above, liability under § 1983 must be premised on a state actor's own actions or omissions, that is, his or her personal involvement in the constitutional deprivation. Because the defendants had different roles in the incidents at issue here, it is necessary to consider separately plaintiff's claims against the defendants.

1.    *Defendant Heyns*

Plaintiff first brings claims against defendant Heyns in his official capacity as Jackson County Sheriff. Plaintiff alleges that the Sheriff's Department failed to have adequate policies governing medical care of detainees and guard response to health crises, and failed to properly train,

supervise, or discipline guards.  Plaintiff's suit against Sheriff Heyns in his official capacity is effectively a suit against the County, and is therefore governed by the standards relating to municipal liability claims under § 1983.  *See McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 n.2 (1997); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

In order to succeed on her claim, it is not sufficient that the plaintiff merely show a violation of a constitutional right attributable to the failure to train or supervise.  In addition, the plaintiff must show that the failure to train or supervise in itself amounts to a deliberate indifference on the part of the supervisory officials.  *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 388 & n.8 (1989) (holding that inadequate training of police is actionable only where the failure to train amounts to "deliberate indifference" to the rights of persons with whom the police come in contact and further noting that "[t]he 'deliberate indifference standard we adopt for § 1983 'failure to train' claims does not turn upon the degree of fault (if any) that a plaintiff must show to make out an underlying claim of a constitutional violation.").  In other words, "plaintiff must offer evidence to show that [the Sheriff] promulgated a policy or followed a given course of conduct or custom, whereby the [jail medical personnel] deliberately refused medical care to plaintiff."  *Robbins v. Sweeney*, Nos. 94-1789, 94-2206, 1994 WL 618488, at *3 (E.D. Pa. Nov. 2, 1994) (citing *City of Canton*).

Plaintiff cannot do so here.  Defendants have presented evidence that the Jail had thorough and extensive policies governing medical treatment of detainees.  *See* Jail Def.s' Br., Ex. 4.  Further, they have presented evidence that the individual Jail employees received extensive training in handling medical issues.  *See id.*, Ex. 3, Dobbins Dep. Tr., at 15, 142; Ex. 7, Peek Dep. Tr., at 8-11; Ex. 13, Rice Dep. Tr., at 7-8; Exs. 23-25.  Even if this training and the Jail's medical

policies are inadequate in some sense, their thoroughness and extensiveness belie any claim that the County was deliberately indifferent to the medical needs of Jail inmates. *See Buchanan v. County of Humboldt*, 50 Fed. Appx. 343, 344 (9th Cir. 2002); *Vaughn v. City of Lebanon*, 18 Fed. Appx. 252, 271 (6th Cir. 2001); *Van Curren v. McClain County Bd. of County Comm'rs*, 4 Fed. Appx. 554, 557 (10th Cir. 2001). Whether the Jail employees could have been better trained or the availability of additional training is not enough to show deliberate indifference. *See City of Canton*, 489 U.S. at 391; *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1030 (3d Cir. 1991).

In support of her claim, plaintiff points to the affidavit of Michael Hackett, her criminal justice expert. Hackett's affidavit is insufficient to raise a genuine issue of material fact with respect to whether the County's policies and training amounted to deliberate indifference. Hackett's affidavit points to what he considers are serious omissions in the treatment and care of Leonardson. *See* Pl.'s Br., Ex. K, ¶¶ 5-13. However, Hackett avers only that he reviewed documents relating to the treatment of Leonardson, *see id.* ¶ 2, and concludes only that the lack of appropriate action with respect to Leonardson itself "demonstrates the failure to train and supervise." *Id.* ¶ 4. This evidence is insufficient to establish that Leonardson's constitutional rights were violated as a result of a custom or policy of the County. In order to state a claim based on municipal or supervisory liability, a plaintiff must allege more than a single incident of unconstitutional conduct "to establish both the requisite fault on the part of the municipality and the causal connection between the 'policy' and the constitutional deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (footnotes omitted); *see also, id.* at 833 (Brennan, J., concurring in part) ("[T]here may be many ways of proving the existence of a municipal policy or custom that can cause a deprivation of a constitutional right, but the scope of § 1983 liability

does not permit such liability to be imposed merely on evidence of the wrongful actions of a single city employee not authorized to make city policy."). Thus, the alleged unconstitutional treatment received by Leonardson is insufficient to establish that the County had a policy or custom of inadequate treatment or training. *See Pardue ex rel. Christian v. Ashe*, 36 Fed. Appx. 199, 201 (6th Cir. 2002). Accordingly, plaintiff's claims against defendant Heyns fail as a matter of law and he is entitled to summary judgment.

This conclusion is not altered by plaintiff's argument that her claims against defendant Heyns are asserted against him in his individual capacity, and not his official capacity. In the first place, plaintiff's complaint clearly alleges that, while the individual officers are sued in their individual capacities, Sheriff Heyns is sued in his official capacity. *See* Compl., ¶ 1. A plaintiff may not "avoid summary judgment based on a claim that is not pled in her complaint." *Patrick v. Northwest Airlines, Inc.*, No. 00-554-JD, 2002 WL 467126, at *3 (D.N.H. Mar. 27, 2002); *see also*, *Perdue v. Union City, Ga.*, No. 1:05CV00753, 2006 WL 2523094, at *9 (N.D. Ga. Aug. 28, 2006). Second, the standards governing individual supervisory liability are the same as the standards governing municipal liability. *See Carter v. City of Philadelphia*, 181 F.3d 339, 356-57 (3d Cir. 1999); *Doe v. Taylor Independent Sch. Dist.*, 15 F.3d 443, 453-54 (5th Cir. 1994) (en banc). Accordingly, the Court should grant the Jail defendants' motion for summary judgment with respect to plaintiff's claims against defendant Heyns.

2.     *Defendants Kuhl, Halsey, and Hartman*

Likewise, the Court should grant the Jail defendants' motion for summary judgment with respect to plaintiff's claims against defendants Kuhl, Halsey, and Hartman, because plaintiff has failed to present sufficient evidence to raise a genuine issue of material fact with respect to whether

these defendants were deliberately indifferent to Leonardson's medical needs.

Defendant Kuhl avers that he was not assigned to Jail, and thus had no responsibility for guarding Leonardson or providing medical care for him. Kuhl's only role in the incident was his investigation of the matter after Leonardson's death. *See* Jail Def.s' Br., Ex. 21, Kuhl Aff., ¶¶ 3-4. Plaintiff has presented no evidence to rebut these averments, nor has she presented any other evidence that Kuhl had any role in the treatment Leonardson received. It is thus clear that Kuhl had no personal involvement in the alleged deprivation of Leonardson's constitutional rights. Accordingly, defendant Kuhl is entitled to summary judgment.

Plaintiff's claims against Sgt. Halsey are based on the events occurring on the morning of December 30, 2002. However, the only evidence offered by the parties with respect to Halsey shows that, on that morning, he noticed that Leonardson had not eaten, and the inmate in the adjacent cell indicated that Leonardson had not eaten in a couple of days. Leonardson appeared dazed and lethargic. Sgt. Halsey contacted the nurse on duty, who had plaintiff transferred back into a close observation cell. *See* Pl.'s Br., Ex. H, Sgt. Brett Halsey Dep. Tr., at 13-19; Jail Def.s' Br., Ex. 8, Reliford Dep., at 141-42. There is no evidence, however, that once Leonardson was transferred to the close observation cell and placed under the care of Reliford that Halsey had any further contact with plaintiff or responsibility for his care. Plaintiff's claim against Halsey is apparently based on the fact that, after the transfer to the close observation cell, "Halsey took no further action to ensure that Mr. Leonardson was receiving medical assistance." Pl.'s Br., at 25. Even if true, this does not establish that Halsey was deliberately indifferent. Halsey had contacted the nurse, and the nurse had ordered Leonardson transferred to a close observation cell. Plaintiff has cited and I have found no case suggesting that, at this point, Halsey had any further duty to follow

up and monitor the care being given Leonardson. On the contrary, once he obtained medical assistance for Leonardson and had no information to the contrary, Halsey was entitled to assumed that Leonardson was being give appropriate medical care. *See Brown v. Williams*, 399 F. Supp. 2d 558, 565 (D. Del. 2005) (no deliberate indifference on part of guard where guard immediately forwarded request for medical care to medical personnel); *cf. McGuckin v. Smith*, 974 F.2d 922, 1061-62 (9th Cir. 1991) (defendants not deliberately indifferent where they acted diligently and alleged delay in treatment was caused by other officials).

The same holds true for plaintiff's claims against defendant Hartman. Hartman testified in his deposition that he had observed Leonardson several times in December. At those times, Leonardson would not eat his breakfast. Hartman would tell Leonardson that he needed to eat, and would inform the nurse that he had not eaten. However, he took no further steps to obtain medical help for Leonardson. *See* Pl.'s Br., Ex. H, Hartman Dep. Tr., at 20-22. Hartman also testified, however, that the nurse examined Leonardson each morning. *See id.* at 21-22. Because Leonardson was already under medical care, it is unclear what additional steps Hartman should have taken beyond reporting to the nurse any relevant facts about Leonardson which occurred during Hartman's shift. Leonardson was already receiving treatment, and Hartman was entitled to rely on the medical professionals' judgments concerning the proper care to be given.

In short, "[i]f a prisoner is under the care of medical experts, . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also*, *Clark-Murphy v. Foreback*, 439 F.3d 280, 291 (6th Cir. 2006); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). Absent specific evidence that *these* defendants were in any way responsible for denying Leonardson access to proper

medical treatment, plaintiff has not properly set forth a constitutional violation. *See Franklin v. Gilless*, 870 F. Supp. 792, 796 (W.D. Tenn. 1994); *Thomas v. Rufo*, No. 92-10261-Z, 1994 WL 175047, at *4 (D. Mass. Apr. 20, 1994).

Accordingly, the Court should grant the Jail defendants' motion for summary judgment with respect to plaintiff's claims against defendant Kuhl, Halsey, and Hartman.

3.       *Defendants Rice and Peek*

A different question is presented by plaintiff's allegations against defendants Rice and Peek. With respect to these defendants, the issue is whether they were deliberately indifferent to Leonardson's serious medical needs by failing to request medical help at sometime during the early morning of January 1, 2003. Defendants argue that the evidence establishes that Rice and Peek did not know the nature of Leonardson's condition or that the condition put him at risk of death. They note that they did not have access to Leonardson's medical records, and that they were given no specific instructions regarding his care upon beginning their shift. They also point to the facts that Leonardson's condition is unusual, he was under medical care, and Leonardson did not request medical attention.

These arguments would have some weight if plaintiff's claim were that Rice and Peek failed to properly monitor and treat plaintiff's condition in general. However, with respect to Rice and Peek, that is not plaintiff's claim. Rather, plaintiff claims that Rice and Peek should have sought immediate medical attention when they entered Leonardson's cell to help him use the bathroom. There is no question that, at this point in time, the evidence viewed in the light most favorable to plaintiff establishes that Rice and Peek knew that (a) Leonardson had a previous problem which required hospitalization; (b) he was under medical care, hence his placement in the observation cell;

(c) Leonardson could not move his legs; (d) Leonardson had lost significant weight; and (e) Leonardson appeared frail and lethargic. Thus, there is evidence which, if believed, suggests that Leonardson was in obvious distress requiring medical attention and that Rice and Peek were aware of this distress. While it is true that the obviousness of the risk itself is not sufficient to impose liability under a theory that the defendants should have known about the risk–the deliberate indifference standard requires actual knowledge–the obviousness of the risk is circumstantial evidence of defendants' knowledge. *See Farmer*, 511 U.S. at 842 ("[A] fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."); *see also*, *Robertson v. Johnson County, Ky.*, 896 F. Supp. 673, 685 (E.D. Ky. 1995) ("[I]f Robertson's injuries were obvious to Pack, then Pack may liable for deliberate indifference to Robertson's medical needs.").

To be sure, the evidence upon which defendants rely may demonstrate that they were not, in fact, deliberately indifferent. However, at this stage the evidence must be viewed in the light most favorable to plaintiff, and all reasonable inferences must be drawn in plaintiff's favor. Accordingly, the Court should deny the Jail defendants' motion for summary judgment with respect to plaintiff's claims against defendants Rice and Pack.

  4.  *The Medical Defendants*

Likewise, the Court should conclude that there is a genuine issue of material fact with respect to whether Dr. Dobbins and Nurse Reliford were deliberately indifferent. The Sixth Circuit has explained that, in cases involving claims of medical mistreatment by medical personnel, "a doctor's provision of 'grossly inadequate medical care' to an involuntary detainee may amount to deliberate indifference. Grossly inadequate medical care is medical care that is so grossly incompetent,

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun County*, 408 F.3d 803, 819 (6th Cir. 2005). Viewed in the light most favorable to plaintiff, there is evidence that the medical defendants' care of Leonardson following his hospitalization was so grossly inadequate as to constitute deliberate indifference.

Regardless of the adequacy of defendants' care of Leonardson up to the time of his hospitalization, after his hospitalization it was well known to both Dobbins and Reliford that Leonardson had a life threatening condition. The specialist seen by Leonardson indicated that Leonardson needed to be closely monitored and hospitalized if his condition worsened. The evidence indicates that, despite these concerns, Leonardson's blood was not drawn on a daily basis for testing nor was a daily examination conducted. *See* Jail Def.s' Br., Ex. 8, Reliford Dep., at 139-40; *see also*, Pl.'s Br., Ex. F, Dr. David Lee Halsey Dep. Tr., at 49, 68-70. Further, when Leonardson complained of dizziness, vomiting, and chest pain, neither Reliford nor Dobbins hospitalized Leonardson, despite his obviously deteriorating condition. When Leonardson indicated that he did not want his blood drawn, Reliford simply left without pushing the matter or seeking further medical assistance for Leonardson. Further, both Dobbins and Reliford testified that they knew of the seriousness of Leonardson's condition, and that nasea, dizziness, vomiting, and electrolyte imbalance were signs of a crisis. *See id*. at 97, 133; Ex. 3, Dobbins Dep. Tr., at 85-86, 106-07, 128-30. The medical evidence, viewed in the light most favorable to plaintiff, shows that Dobbins failed to properly monitor Leonardson's potassium and sodium levels, and to respond in any appropriate way to Leonardson's severely elevated potassium levels and severely depressed sodium levels. *See* Pl.'s Br., Ex. C., Jacobs Dep. Tr., at 69, 88, 90, 100; Ex. F, Dr. David Lee Halsey Dep. Tr., at 72-73, 78.

To be sure, plaintiff's evidence may not be credited by the jury, or a jury may find that defendants' own evidence rebuts plaintiff's and shows that they were not deliberately indifferent to Leonardson's serious medical needs. On this motion for summary judgment, however, the Court must accept plaintiff's evidence and draw all reasonable inferences in plaintiff's favor. Even though Leonardson obviously received some treatment plaintiff's evidence, if credited by the jury, is sufficient to show that the "treatment [Leonardson] did receive was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (internal quotation omitted). Accordingly, the Court should deny the medical defendants' motion for summary judgment.

### 5. *Qualified Immunity*

Finally, the Jail defendants contend that they are entitled to qualified immunity, and thus summary judgment. The Court should reject this claim with respect to defendants Rice and Peek.

As a general matter, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose behind qualified immunity is to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Id.* at 806. In analyzing a claim of qualified immunity, a court engages in a two-step inquiry. First, the court asks whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the plaintiff establishes a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Id.*

In determining whether a right is clearly established, a court looks first to the decisions of the Supreme Court, then to those of the Sixth Circuit, and finally to decisions of other courts. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. It is not enough for a general right–such as the right to adequate medical care–be established; the right must be established "in a more particularized . . . sense" relevant to the defendant's acts or omissions. *Id*. At the same time, the precise conduct at issue need not previously have been held unlawful, and conduct can violate clearly established law "even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "[I]n an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Under *Brosseau*, as the Sixth Circuit has recently explained, a plaintiff may show that a defendant violated clearly established law by show either that: (1) the violation was obvious under the general constitutional standards governing the asserted right; or (2) the defendant's conduct failed to adhere to a particularized body of precedent that governs the case. *See Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) (discussing *Brosseau*, 543 U.S. at 199-200).

Here, as noted above, the Jail defendants are entitled to summary judgment on the merits with respect to plaintiff's claims against defendants Heyns, Kuhl, Hartman, and Halsey. Thus, under *Saucier*, the Court need not consider the second step of the qualified immunity inquiry. Likewise, the medical defendants have not moved for summary judgment on the basis of qualified immunity, and the Court need not consider the issue with respect to defendants Reliford and Dobbins. Thus, the Court need only consider whether defendants Rice and Peek were sufficiently on notice that their

conduct, as alleged by plaintiff, violated Leonardson's clearly established rights. The Court should conclude that they were.

This case comes within the *Brosseau* Court's first method of establishing a violation of a clearly established right. The conduct alleged by plaintiff, viewing the evidence in the light most favorable to plaintiff, establishes that the need for defendants Rice and Peek to obtain medical care for Leonardson was so obvious that the failure to do so clearly violated Leonardson's constitutional rights. Contrary to defendants' arguments, this is not a case about holding Rice and Peek accountable for failing to second guess the treatment decisions of the medical providers, or about their failure to correctly diagnose Leonardson's condition. As explained above, plaintiff has presented evidence that Leonardson's physical condition was so poor when they entered the cell to help him go to the bathroom that he was on death's door and that it was obvious that he was in such medical distress. It should have been clear to a reasonable officer that, under plaintiff's version of events, a failure to seek medical help amounted to deliberate indifference to Leonardson's medical needs and, hence, was unconstitutional. As the Sixth Circuit recently explained, a long-existing body of law supports this conclusion:

> Deliberate indifference to a prisoner's serious medical condition is a known violation of the Eighth Amendment right to be free from cruel and unusual punishment. *See Estelle*, 429 U.S. at 104 (holding that "deliberate indifference to serious medical needs of a prisoner" is "proscribed by the Eighth Amendment"). Acknowledging, but yet ignoring, the obviously debilitated state of a prisoner in need of medical attention is conduct that would alert a reasonable person to the likelihood of personal liability. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir.1972) (noting "[W]here the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process.").

*Taylor v. Franklin County, Ky.*, 104 Fed. Appx. 531, 543 (6th Cir. 2004).[4] Thus, genuine issues of

material fact remain with respect to whether Rice and Peek violated Leonardson's clearly established

rights in circumstances in reasonable officers in their position would have known that they were

doing so. Accordingly, the Court should deny defendants' motion for summary judgment on the

basis of qualified immunity with respect to defendants Rice and Peek.

E.    *Conclusion*

In view of the foregoing, the Court should deny the medical defendants' motion for summary

judgment, and should grant in part and deny in part the Jail defendants' motion for summary

judgment. Specifically, the Court should grant the Jail defendants' motion for summary judgment

with respect to plaintiff's claims against defendants Heyns, Kuhl, Hartman, and Halsey, and deny

the motion with respect to plaintiff's claims against defendants Rice and Peek.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.

§ 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver

of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health*

*& Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.

---

[4]Defendants' reliance on *Perez v. Oakland County*, 466 F.3d 416 (6th Cir. 2006), is misplaced. In that case, the Sixth Circuit held that a caseworker's failure to seek psychological treatment for the prisoner's suicidal tendencies before transferring him to a general housing unit did not violate clearly established law because the relevant body of case law established both that there was no constitutional right to be screened for suicidal tendencies and that the general body of deliberate indifference law was insufficient to establish a clearly established right to be protected from committing suicide. *See id*. at 429. *Perez* does not call into question the body of law dealing with defendant officials sued for failing to seek obviously necessary medical treatment.

1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/27/07

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 27, 2007.

s/Eddrey Butts
Case Manager